**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-11046
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

UNDRELL AMBROSE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:97-CR-SS-T-23)
_____

September 21, 1998

Before DeMOSS, PARKER and DENNIS, Circuit Judges.

PER CURIAM:[*]

Undrell Ambrose appeals his guilty plea conviction for distribution of cocaine base. We affirm.

### FACTS AND DISTRICT COURT PROCEEDINGS

A 47-count indictment charged Ambrose and numerous codefendants with a variety of drug-trafficking offenses. Ambrose was charged with conspiracy to distribute cocaine base and two

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

counts of distribution of cocaine base.

On June 16, 1997, the morning trial was set to begin, Ambrose pleaded guilty to one of the distribution charges (violation of 21 U.S.C. § 841(a)(1)), pursuant to a written plea agreement. The charge, as indicted, included the allegation that the sale took place in the vicinity of a school, but that aspect of the count was deleted at the guilty plea hearing.

The factual resume, signed by Ambrose and submitted in support of the plea, recited:

> On November 21, 1996[,] an undercover officer and co-defendant Chandra Pye traveled from Leonard, Texas[,] to Greenville, Texas. Once they arrived they went to 1123 O'Neal Street. Pye went inside the residence, and a short time later the defendant, **UNDRELL AMBROSE**[,] arrived. The two then negotiated for the purchase of crack cocaine. The defendant retrieved crack cocaine out of the trunk of another vehicle and gave the cocaine base to Pye. Pye in turn distributed the cocaine base to an undercover officer.

According to the written plea agreement, there was "no agreement as to what the sentence will be." In a handwritten footnote, the Government stated that it "recommends that any period of incarceration does not exceed 3 years," but noted that "[a]ll parties agree that this recommendation is not binding on the court." Ambrose acknowledged that "this plea agreement does not create any right to be sentenced within, or below, any particular punishment range." Further, the agreement stated that Ambrose

> "shall cooperate with the Government, by giving truthful and complete information and/or testimony concerning [his] participation in and knowledge of criminal activities. . . . A Motion for Downward Departure under [U.S.S.G. §] 5K1.1 may be filed by the government if, and only if, in the sole discretion of the United States Attorney . . ., it is determined that [Ambrose] has

2

rendered substantial assistance to the government in its investigation and prosecution of others."

At the guilty plea hearing, the Government reiterated its recommendation that any period of incarceration not exceed three years. Ambrose acknowledged that he had read the plea agreement, discussed it with his attorney and that nobody had promised him anything other than what was in the plea agreement.

On July 11, 1997, Ambrose filed a motion to withdraw his guilty plea, alleging that Assistant United States Attorney Jarrett lied to him on the morning of the plea, stating that codefendants Jamie Perkins and Rodney Taylor would testify against Ambrose when they had no intention of doing so. Ambrose attached affidavits from Perkins and Taylor to support the allegations in the motion.

On September 11, 1997, the district court conducted a hearing, denied the motion and proceeded immediately with the sentencing hearing. The district court *sua sponte* assessed an increase for obstruction of justice based on a finding that Ambrose committed perjury at the hearing on his motion to withdraw his plea when he testified that he was innocent. Ambrose was sentenced to 136 months in prison and three years of supervised release.

### DENIAL OF MOTION TO WITHDRAW GUILTY PLEA

A district court may allow a guilty plea to be withdrawn prior to sentencing upon the showing of "any fair and just reason." FED.R.CRIM.P. 32(d). We will reverse the denial of a motion to withdraw a guilty plea only for abuse of discretion. *United States v. Gaitan*, 954 F.2d 1005 (5th Cir. 1992).

3

Seven factors guide the decision to grant or deny such a motion:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant delayed in filing the motion and, if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether adequate assistance of counsel was available to the defendant; (6) whether his plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources.

*United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991)(citing *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984)(the "*Carr* factors").  No single factor or combination of factors mandates a particular result.  Instead, the district court should make its determination based on the totality of circumstances.  *Id.*

Ambrose contends that the district court abused its discretion by denying his motion to withdraw his guilty plea because each of the seven factors cited in *United States v. Carr* favor withdrawal in his case.

**(1) Whether the defendant has asserted his innocence**

At the hearing on his withdrawal motion, Ambrose denied under oath selling cocaine to Chandra Pye on November 21, 1996.  This was the same conduct, alleged in Count 20, to which he had earlier pleaded guilty under oath.  The district court, after hearing Ambrose's testimony, as well as various other fact witnesses called by the government, determined that "Mr. Ambrose testified truthfully in June [at the guilty plea hearing] and perjured himself today."

This court has held that a defendant's assertion of actual

4

innocence is insufficient to support a plea withdrawal under *Carr* in the absence of evidence to support the assertion, since a contrary rule would grant the defendant an inappropriate ability to reverse his decision to plead guilty. *United States v. Bond*, 87 F.3d 695, 701 (5th Cir. 1996). Because there was no evidence to support his assertion of innocence, this factor weighed in favor of the Government, as the district court found.

**(2) Whether withdrawal would prejudice the Government**

The government asserted below that it would be prejudiced if withdrawal were granted since it had expended "time, effort and money . . . and released all of the witnesses and much of the evidence is no longer available." The district court determined that the Government would not be prejudiced but would suffer only minor inconvenience if the case proceeded to trial, because the Government had been able to marshal several witnesses to testify against Ambrose on short notice at the plea withdrawal hearing. There is nothing in the record or in the positions of the parties on appeal that call this ruling into question. This second factor therefore weighs in favor of allowing the withdrawal.

**(3) Whether the defendant delayed in filing the motion**

Ambrose filed his motion to withdraw his guilty plea 25 days after the plea was entered. In *Carr*, this court held that a 22-day delay was excessive. *Carr*, 740 F.2d at 345. However, in *Carr,* the motion to withdraw was filed only three days before sentencing. *Id.* In Ambrose's case, sentencing was not scheduled until almost two months later. The district court did not mention this factor

5

in its ruling.  However, the Government concedes that Ambrose did not unduly delay filing his withdrawal motion.  This factor weighs in favor of Ambrose.

**(4) Whether withdrawal would inconvenience the court**

The district court indicated that it had "no problem being inconvenienced" by the withdrawal.  Ambrose argues that the court's language amounted to a ruling that no substantial inconvenience would inure to the court if Ambrose was allowed to withdraw his guilty plea.  The Government argues that the court's later finding concerning Ambrose's guilt implies that the court would be inconvenienced by a plea withdrawal because Ambrose was guilty.  However, the court made no finding of inconvenience and because there is no information in the record about the court's schedule, we have no basis on which to find that a withdrawal would inconvenience the court.  This factor weighs in favor of Ambrose.

**(5) Whether Ambrose had adequate assistance of counsel**

The district court determined that Ambrose had received close assistance of counsel.  Ambrose now takes the position that he did not have adequate assistance of counsel because the Government misrepresented the truth to his attorney.  He argues that when the Government failed to provide truthful information to his counsel concerning the availability of government witnesses, it prevented his counsel from rendering effective assistance.  Ambrose made no such argument in the district court.  Given the evidence in the record supporting the district court's finding and Ambrose's failure to argue his appellate theory below, we will not disturb

6

the district court's finding that this factor favors the Government.

**(6) Whether the plea was knowing and voluntary**

Because a guilty plea involves the waiver of several constitutional rights, it must be made intelligently and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). We review the voluntariness of a defendant's guilty plea *de novo*. *United States v. Amaya*, 111 F.3d 386, 388 (5th Cir. 1997).

A situation in which a defendant is induced by deception or misrepresentation to enter a plea of guilty does not meet the standard of voluntariness articulated by the Supreme Court and renders the resulting plea involuntary. *See id*. at 389.

In denying Ambrose's motion to withdraw his guilty plea, the district court stated that "[t]he question . . . is did the government overreach in leading [Ambrose] to believe that witnesses will testify in the case when the probability of their testimony was remote." The court continued:

> The court does believe that the prosecution did attempt to, and quite possibly did create an atmosphere that would pray [sic] on the mind of the defendant that was going to trial. I certainly do not condone the government's indicating that it is calling witnesses that it really had no actual probability to call, as there is no testimony that any agreement had been made with the witnesses for their testimony, nor that their attorneys had ever agreed that they should testify in the case. So I do not condone the actions of the prosecutor in this case in that respect.

However, the district court noted that it was not unusual for defendants to decide to plead guilty on the day of trial. Further, the two witnesses who had been added to the list were not directly

7

involved in the count to which Ambrose pleaded guilty, while two other available witnesses -- Chandra Pye and the confidential informant referenced in the factual resume -- had testified in an earlier trial in which Ambrose's co-defendants were convicted. This led the district court to conclude that the two additional witnesses did not produce an overwhelming compulsion for the defendant to plead guilty when otherwise he would not have done so. The court also considered the evidence offered at the hearing and concluded that Ambrose was in fact guilty. Based on these conclusions, the district court held that Ambrose's guilty plea was entered "freely, voluntarily and intelligently."

Like the district court, we are concerned by the prosecution's overreaching. However, we agree with the district court's conclusions regarding the probable effect of the tactic.

We therefore conclude that this factor weighs in favor of the Government.

**(7) Whether withdrawal would waste judicial resources**

The district made no finding on this factor except to say that exonerating innocent defendants is never a waste of judicial resources. The Government argues that, because the district court concluded that Ambrose was in fact guilty, we should conclude that further proceedings would waste judicial resources. However, we conclude that this factor is neutral and does not weigh in favor of either party.

**CONCLUSION**

8

Three of the seven *Carr* factors weigh in favor of Ambrose, three weigh in favor of the Government, and one is neutral. Although it is a close question, we cannot say that the district court abused its discretion in denying Ambrose's motion to withdraw his guilty plea.  Further, we find the other issues raised by Ambrose on appeal are without merit.  We therefore affirm Ambrose's conviction and sentence.

AFFIRMED.